## The State v. McBride.

1. Where one gen. assembly proposes amendments to the constitution of the State, which are ratified and adopted by the next gen. assby. the supreme court may yet look into their proceedings, to see that all prerequisites have been complied with, and that they have been adopted by proper majorities.
2. An amendment which is ratified by two thirds of a quorum—that is two thirds of a majority of all-elected, is ratified by two thirds of that *house*, within the meaning of the constitution.
3. The 1st amendment proposed by the 7th and adopted by the 8th genl. assby. which vacates the offices of the judges of the circuit court—is an independent amendment, and can well stand alone.
   The said amendment is valid, and vacated the offices of the judges of the circuit courts on the 1st of January 1836.

```
 4   303
132  433

 4   303
160   88

 4   303
171  1 97
```

## QUO WARRANTO.

The information charges that the defendant claiming of right to act as judge of the circuit court for the second judicial circuit of this State, did without any legal commission or authority, exercise and transact certain business, rights, duties, &c. of the office of circuit judge, for said circuit &c. The defendant pleads a commission of judge of the said circuit court; granted to him by the Governor of the State, on the 11th day of December, 1830. To this plea the circuit attorney demurs.

Mr. Chambers, circuit attorney, for the State.

*Statement of the case.*

This is an information in the nature of a writ of quo warranto against Priestly H. McBride the defendant, requiring him to shew cause by what authoity or commission, he exercises the duties &c. of the office of circuit judge of the second judicial circuit. There are three counts, each of which charges a usurpation of the office of circuit judge, since the first day of January 1836.

*Argument of counsel for the State.*

To this information the defendant plead a commission from the Governor, for the office of circuit judge, dated the 11th day of December 1830; and a qualification thereon dated, the 14th day of Febuary 1831; and concludes that by this only, he claims the right to exercise the aforesaid office. The State demurred to this plea, and offer the following reasons to sustain the demurrer.

That by the constitution of the State, this commission was vacated on the first day of January 1836; and therefore the commission does not answer the information.

The constitutional provision above alluded to, is the amendment; and proposed by the seventh and passed by the eighth general assembly, and by them promulgated as duly passed.

APRIL TERM
1836.

The State
v.
McBride.

In support of the demurrer, I contend:

First, that this amendment having been passed and promulgated by the eighth general assembly, a sa part of the constitution, (the general assembly having the power to amend the constitution,) this court is bound to recive and give it the effect of a constitutional provision. It being an act done by the general assembly, not in their capacity of ordinary legislation, but the exercise of sovereign authority in a conventional capacity.

Authorities cited.—Rawl. on constitution 16, 15; 3 Cond. Rep. 585; Story's com. p. 134, sec. 178 p. 24; Vattel's law of nations, 1 book, 63rd; Hoffman's legal out lines, 365; 6 Cranch 145, 130; 1 Cranch's Rep. 165, 170: Tucker's notes on Blac. 13, 16, 18; Biglow's dig. 204; 2 Dale 308: Webster's Chandler v. Sect. of war; 1 Kent 295, 268, 270; State constitution.

Second, that the general assembly, are by the law, the judges of whether all the requirements of the 12th article of the constitution have been complied with; and that upon the enrolement of this amendment, it become a record of such complete verity, that no averment can be made against it, on the ground of its being improperly proposed, published, or passed; and that the enrolment estops this court from going behind the enrolment, and hearing any testimony upon the mode or manner of its being proposed, published or passed. That no issue can be framed which will justify this court in hearing any such testimony.

Authorities.—1st Coke's Littleton, sec. 175; B. Plow. 97: Gilbert's Ev. 5: 2nd v. Evans app. Pothier 132: 1 Cond. Rep. 172: Phillip's Ev. 218: 2 Bac. Abi. Title Ev. F.: 1 Starkie Ev. 161, note 1, p. 165: 7 Johns.' Rep. 38 1 Chitty's plead. 30.

Third, that the amendment was passed by the competent authority, and that its provisions are such as the power passing, might in conformity with *its powers,* propose and pass, and can have an effect (to wit: vacating the offices of the circuit judges,) and this court are bound to give it that effect.

Authorities.—3 Con. rep. 593, 4: State con. 276: Jacob's dic. title amendment: Rev. statutes 469; Back. Ab. Tit. statute: 4 Cond. rep. 544, 558, 571: 3 Ccnd. rep. 583: Federalist No 84, p. 369: Gentry and wife v. Fry: (not reported) Kent 236: 1 Blackstone 478. 9 Cran. 43, 292: Webster's speech p 197, 8: 2 Blac. com. 36, 267–8, 271–2, Ibi. 233: Raw. 16: Hornetheus' speech and adeptory F. C.: Randolph, same: Tucker's notes on

Blac. 25–6: 2 Dall. Rep. 304: 5 Cond. Rep. 570; Tucker's notes on Blac, 20, in point: 1 Cond. rep. 172: 1 Kent 266, 268, 270, 427: 5 Cond. rep. 228: 8 Coke's rep. 88 cited in 2 Term, 748: Revised laws 1825, p 267, sec. 5, 26, 27: Session acts 1827, p. 18, sec. 4, 5, 7, 9; 4 Cond. rep. 576–77: Tucker's notes, 64, 48–9, note 5: Hoffman's outlines 114, 377, 295: Dr. Lame on Bc. 77 note: Story's com. 134: Wilson's speech 18, 19, 20.

Fourth—If the court say, they may have testimony concerning the action of the general assembly, as to the proposing, publication and passage, to invalidate the amendment; I contend that they can only hear that evidence upon an issue properly framed.

Fifth—That the journals of the two houses cannot be used as testimony to invalidate or deny the verity of a statute law or an amendment to the constitution.

Sixth—If the court say that they can go behind the enrolment and promulgation by the eighth general assembly and hear testimony, and that the journals will be received as that testimony, I contend that from the journals of the two houses of the seventh and eighth general assemblies, it will be seen that this amendment was duly proposed, published and passed. That the seventh general assembly proposed four distinct propositions. 1st a repeal of the present tenure of the offices of the judges. 2d. an ouster of the incumbents of the circuit conrt bench in 1836. 3rd. A new mode for the appointment of their successors. 4th a repeal of the tenure of the office of clerks and a new mode of appointing the same; and that of the four distinct propositions, the 2nd and 4th were adopted, and the 1st and 3rd rejected by the eighth general assembly.

Authorities.—Journals of 1832 and '3, p 84–5, 89, 159 60, 162–3, 172–4. Ibid. senate, p 151, 162, 172, 177–8; house, 211, 230; senate, 199; journals, 49, 55, 58, and following senate 10, 53–3, 4, 5, 59, 61 to 65, 89; house do. 155, 157, 162, 170; senate, 125.

Bac. Abi. construction of statutes: Jefferson's manu. Federalist 253.

From all these reasons and the authorities, I insist that the court must sustain the demurrer, and give judgment of ouster against the said defendant, for his unlawful exercise of the duties of circuit judge.

Opinion of the court by TOMPKINS J.

The question raised for the decision of this court is, whether at the last general assembly, such change was

Opinion of the court

APRIL TERM
1836.

The State
v.
McBride.

made in the constitution of this State, that on the first day of January 1836, the defendant ceased to be judge by virtue of the commission set out in his plea: the acts charged against him being done and performed since that time.

In the 12th article of our constitution, it is provided that the general assembly may, at any time, propose such amendments to the constitution as two thirds of each house shall deem expedient: which shall be published in all the news papers published in this State, three several times, at least twelve months before the next general election: and if at the first session of the general assembly after such general election, two thirds of each house shall, by yeas and nays, ratify such proposed amendments, they shall be valid to all intents and purposes, as parts of this constitution, provided that such proposed amendments, shall be read on three several days, in each house as well when the same are proposed, as when they are finally ratified. At the last session of the general assembly, certain amendments proposed by the preceding assembly, were acted on and declared to be finally ratified. The first, and that on which the case now before this court must be decided, is as follows:

"That the offices of the several judges of the circuit courts, within this State, shall be vacated on the first day of January, 1836."

For the State, it is contended by the circuit attorney, that the proposed amendments being declared by the general assembly to be ratified, it is not permitted to this court to look into the matter to see whether the general assembly have pursued the power granted to them in the twelfth section of the constitution. For the defendant, it is contended that it is the duty of the court to examine strictly, the whole matter, and that if on such examination, it be found, that the two houses have not strictly pursued their power, it then becomes our *bounden duty* to decide that the section above cited is of no effect: and that the commission of the defendant is still in full force, it being to continue in force during good behaviour. It is further contended that this amendment proposed by the seventh general assembly, was not ratified by two thirds of the senate of the eighth general assembly, as required by the 12th article of the constitution of this State, and that the amendment itself was not in itself an independent proposition: that another amendment proposed by the seventh general assembly, on which this is alleged to have been dependent, having failed, this shared its fate.

Where one genl. assembly proposes amendments to the constitution of the State,— which are ratified and adopted by the next genl. assembly, the supreme court may yet look into their proceedings to see that all prerequisites have been complied with, and that they were adopted by proper majorities.

The constitution of this State, requires that each offi-
cer, whether civil or military, shall before entering on the
duties of his office, take an oath or affirmation to support
the constitution of the United States and of this State,
and to demean himself faithfully in office. In pursuance
of the duty imposed by this oath, it has become quite a
common business of the courts to examine the acts of the
legislative body, to see whether any of them infringe
the constitution, and to declare that such acts or parts of
acts as are repugnant to the constitution, are not the
law of the land, and are therefore of no force. No edu-
cated man at this day denies this right to the courts. On
the contrary, it is considered a base abandonment of
duty for a judge to hesitate, when it becomes his duty, to
examine the acts of the more powerful branches of the
government. If then, the constitution be the supreme
law of the land, it becomes the duty of the judge to look
into and understand well this first law of the land. The
general assembly, acting itself under a power granted by
the convention, can only change the constitution in the
manner presented to it.

Is then, this court, each member of which is sworn to
support the constitution, that first law of the land, to be
told that they are not to enquire what that constitution
is.

We are told that this is a matter which the people have
confided to two successive general assemblies, and that
their declaration of what is done, is to be to us, evidence
that the thing is done, they being sworn as well as our-
selves, to support the constitution; yet we look into the
acts of each general assembly, and if we find any of its
acts violating the constitution, we declare such acts null
and void.

The general assembly, or two general assemblies in
succession, are but public servants, and it is disrespect-
ful to them to say, that their acts will not bear inspection.
If then, they will bear inspection and if, as we believe,
they have left behind them evidence of what they have
done, why need we, whose duty it is to observe the con-
stitution as the supreme law of the land, hesitate respect-
fully to approach and examine those proofs, and see if in-
deed the constitution of 1820 has been changed, or if by
neglecting to pursue the course pointed out by the 12th
section of the constitution, they have failed to give to
their acts the validity of constitutional acts. To tell us
that the people have reserved to themselves the sole right
of looking into this matter, is to tell us that we are sworn

APRIL TERM
1836.

The State
v.
McBride.

An amendment which is ratified by two thirds of a quorum—that is, two thirds of a majority of all elected, is ratified by two thirds of that *house*, within the meaning of the constitution.

to support a costitution which we are not permitted to know.

The first objection of the defendant's counsel is, that this amendment did not pass the senate by a majority of two thirds of that house. The senate then consisted of twenty-four members, and it appears that seven voted against, and fifteen for it. The question to be solved is, what is the meaning of the word *house*, as used in the constitution; does it mean all the members elected, or does it mean any number sufficient to constitute a quorum?

In the 17th section of the third article of the constitution, the word house is mentioned as consisting of all the members elected. "A majority of each house shall constitute a quorum to do business." The word house, is frequently used in the same article as "each house shall appoint its own officers" &c.

"Neither house shall, without the consent of the other, adjourn for more than two days at any one time" &c. To cite further instances, would be useless. The word house, as used in the constitution, may then, either be the whole number elected to that house or a majority of its members. The most common meaning of the word then, being a number of members sufficient to constitute a quorum to do business, it is our opinion that fifteen members of the senate having voted for this amendment, and seven only against it, two being absent, it was passed by the required number of votes.

The first amendment proposed by the 7th and adopted by the 8th general assy. which vacates the offices of the judges of the circuit court—is an independent amendment and can well stand alone.

Next, is it such a proposition as is independent and can stand by itself? We are told by the counsel, that it was proposed in connexion with another, and that having fallen, this must be nugatory. The proposed amendment alluded to, is this: "The judges of the circuit court &c. shall hereafter hold their offices for the term of six years, and until their successors are duly elected, commissioned and qualified" &c.

It is not at all improbable that the seventh general assembly might never have proposed the amendment above mentioned to have been ratified by the eighth, had they not expected this other by them proposed, to have also been ratified. But that they did not intend the one to be dependent on the other, is satisfactorily enough proved by the fact, that they were submitted as separate and distinct propositions;—that ratified, is at all events capable of standing alone.

The said amendment is valid; and This court then, being of opinion that the constitution of this State is so changed by the action of the seventh

and eighth general assemblies, that the offices of the judges of the several circuit courts within this State, were vacated on the first day of January 1836; are of opinion that Priestly H. McBride, in discharging the duties of judge of the circuit court of the second judicial circuit, by holding courts &c., has been guilty of usurpation of office, and do adjudge that he be ousted therefrom. The court further, considering that no evidence has been offered to charge the defendant with any evil intent in this affair, and it being probable that he acted from mistaken views only, will not avail itself of the power given by law, to impose a fine on him, and condemn him to pay the costs only of this proceeding.